2022 IL App (2d) 200199-U
No. 2-20-0199
Order filed February 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 99-CF-405 |
| | ) | |
| JESSE MARTINEZ, | ) | Honorable |
| | ) | William J. Parkhurst, |
| Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly denied leave to file a successive post-conviction petition, based on *Miller v. Alabama*, 567 U.S. 460 (2012), where defendant was 18 at the time he committed the offenses.

¶ 2    Defendant, Jesse Martinez, appeals from a decision of the trial court denying him leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant's proposed petition claimed that his 76-year sentence for first degree murder, three counts of attempted first degree murder, and home invasion violated both the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate-

penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). This is because defendant, who was 18 at the time of the offenses, claimed he was entitled to the same protections as juvenile offenders pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). We affirm.

¶ 3                                 I. BACKGROUND

¶ 4     Defendant was born on October 14, 1980. On the morning of February 13, 1999, defendant and his friends, Patrick Inocencio and Melissa Sandoval, forced their way into a hotel room at the Howard Johnson's in North Aurora. Then, defendant and Inocencio opened fire on six people inside the room, all at close range. As a result, Eric Johnson was killed and Michael Johnson, Rebecca Wilkinson, and Natalia Rodriguez were grievously injured.

¶ 5     The motive for the shootings was gang-related. Defendant, Inocencio, and Sandoval were affiliated with the Latin Kings, and it was believed that Eric Johnson was affiliated with the Ambrose street gang.

¶ 6     In March 1999, defendant, Inocencio, and Sandoval, were charged with multiple offenses related to the Howard Johnson shootings. Defendant was arrested nearly a month later in Albuquerque, New Mexico, and extradited to Kane County. Inocencio entered a negotiated guilty plea to murder and other offenses and was sentenced to 32 years' imprisonment. Sandoval was found not guilty after a bench trial.

¶ 7     In December 2001, defendant's case proceeded to a jury trial. Inocencio refused to testify against defendant. Sandoval testified against defendant, and defendant was identified by several of the survivors. The jury found defendant guilty of all charges, including first-degree murder (720 ILCS 5/9-1(a)(1) (West 1998)), three counts of attempted first-degree murder (*id.* §§ 8.4, 9-1(a)(1)), and home invasion (*id.* § 12-11(a)(2)). Following a sentencing hearing, and defendant's statement in allocution, the trial court (Judge Donald C. Hudson) sentenced defendant to 76 years'

imprisonment: 38 years for the murder of Eric Johnson, consecutive to 12 years for the attempted murder of Rebecca Wilkinson, consecutive to 10 years for the attempted murder of Natalia Rodriguez, consecutive to 10 years for the attempted murder of Michael Johnson, consecutive to six years for home invasion. Defendant filed two post-sentencing motions—one *pro se* and one through counsel—seeking a reduction in his sentence. The trial court denied both motions.

¶ 8      On direct appeal, we affirmed defendant's convictions and sentence. *People v. Martinez*, 2-04-0094 (2005) (unpublished order under Supreme Court Rule 23). In particular, we rejected defendant's claim that we should reduce his sentence because it was " 'basically a life sentence' " and that, in part because of his age, defendant should be afforded an opportunity for release based on his potential rehabilitation. We noted that the trial court carefully considered factors in aggravation and mitigation, including defendant's age, before it pronounced defendant's sentence. We held that defendant's sentence was not excessive for, as the trial court noted, these were extremely serious, violent crimes.

¶ 9      In 2006, defendant filed a *pro se* postconviction petition asserting, among other things, a claim of actual innocence. The trial court (Judge T. Clint Hull) granted the State's motion to dismiss defendant's additional claims, but advanced defendant's actual-innocence claim to a third-stage evidentiary hearing. The hearing centered in large part on Inocencio's testimony that he and a different member of the Latin Kings, Omar Delgado, and not defendant, were responsible for the Howard Johnson shootings. Sandoval testified that she did not know who was with her and Inocencio in the hotel room and stated that she falsely identified defendant at both his trial and her own trial. The trial court found the testimony of Inocencio, Sandoval, and other witnesses was incredible and unworthy of belief. Defendant appealed that decision, and this court affirmed. *People v. Martinez*, 2015 IL App (2d) 130474-U.

¶ 10    In 2019 defendant sought leave to file a successive postconviction petition. He contended he should have been afforded the protection given to juvenile offenders under *Miller v. Alabama*, 567 U.S. 460 (2012), before being given what was, in effect, a 76-year *de facto* life sentence. Defendant sought a new sentencing hearing based upon the " 'validation' of <u>science</u> and <u>social-science</u> research" as well as recent court decisions. Defendant noted that while in prison he had obtained a number of certificates and alleged that he has now "renounce[ed] involvement in any gang related orders or activities." Defendant asserted, in the most general terms, that he could not have brought his claim sooner due to "new cases" after *Miller.*

¶ 11    The trial court (Judge William Parkhurst) issued a four-page memorandum decision denying defendant leave to file. The court found that defendant's petition failed to meet the cause-and-prejudice standard as required by section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)), to excuse his failure to raise this claim in his initial petition. The trial court further noted that the sentencing judge explicitly took into account defendant's age and rehabilitative potential when it handed down defendant's sentence. Defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13    Defendant contends that the trial court erred by not granting him leave to file his successive petition and present his claim that his sentence violated the proportionate penalties clause. Defendant does not contest the denial of leave to file with respect to his eighth amendment claim.

¶ 14    The Act sets forth a procedure by which a defendant may assert that his conviction was based on a substantial denial of his rights under the federal or state constitutions or both. 725 ILCS 5/122-1(a)(1) (West 2018). The Act contemplates the filing of a single petition. 725 ILCS 5/122-3 (West 2018). Because successive petitions impede the finality of criminal litigation, where a defendant does not assert actual innocence (and here, defendant does not), he must satisfy the

cause-and-prejudice test. See *People v. Holman*, 2017 IL 120655, ¶ 26. To establish cause, a defendant must show some objective factor external to the defense that impeded his ability to raise the claim in the initial postconviction proceeding. *Id.* To establish prejudice, a defendant must show that the claimed constitutional error so infected the proceeding that the result violated due process. *Id.* The cause-and-prejudice test is "a higher standard than the frivolous-or-patently-without-merit standard applied at the first-stage review of a defendant's initial petition." *People v. Howard*, 2021 IL App (2d) 190695, ¶ 21. *Id.* We review the denial of leave to file a successive petition *de novo* . *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 15 The State argues that in *People v. LaPointe*, 2018 IL App (2d) 160903, and *People v. Hoover*, 2019 IL App (2d) 170070, we rejected essentially the same proportionate penalties claim that defendant here sought leave to present. Defendant suggests we reconsider *LaPointe* and *Hoover*, and instead follow a line of First District cases, beginning with *People v. House*, 2019 IL App (1st) 110580-B, *pet. for leave to appeal granted* No. 125124 (Jan. 29, 2020).

¶ 16 After briefing was completed in this case however, the Illinois Supreme Court issued its decisions in *People v. House*, 2021 IL 125124, and *People v. Dorsey*, 2021 IL 123010. In *House*, the supreme court reversed portions of the First District's decision (2021 IL 125124, ¶ 32), and in *Dorsey*, the supreme court cited our decision in *LaPointe* with approval and applied a similar analysis to uphold the denial of leave to file a successive petition (*Dorsey*, 2021 IL 123010, ¶ 73 (citing *LaPointe*, 2018 IL App (2d) 160903, ¶ 59)).

¶ 17 We decline defendant's invitation to reconsider *LaPointe* and *Hoover*, particularly in light of our supreme court's decisions in *House* and *Dorsey*. Furthermore, we determine that the trial court's straightforward application of the well-settled principles governing *Miller* claims demonstrates that the court correctly denied defendant leave to file his successive petition.

¶ 18    The United States Supreme Court has long maintained that juveniles are constitutionally different from adults for sentencing purposes. In *Roper v. Simmons*, 543 U.S. 551 (2005), the Court prohibited the imposition of the death penalty for crimes committed under the age of 18. In *Graham v. Florida*, 560 U.S. 48 (2010), the Court held unconstitutional a life without parole sentence imposed on a juvenile for a single, nonhomicide offense. And, in *Miller v. Alabama*, 567 U.S. 460, the Court held "that the [e]ighth [a]mendment forbids a sentencing scheme that mandates life in prison without possibility of parole for *juvenile* offenders." (Emphasis added.) *Id*. at 479.

¶ 19    *Miller* did not forbid life sentences for juveniles altogether, however; discretionary life sentences for juveniles are still possible. But the Supreme Court said, when sentencing a juvenile offender, a judge is required "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 481.

¶ 20    Defendant was not a juvenile at the time he committed these offenses; he was 18, three months, and 30 days old. In *LaPointe*, 2018 IL App (2d) 160903, we rejected an all-but identical challenge by an adult murder defendant, who received a discretionary natural life sentence, finding that *Miller* categorically did not apply to adult offenders. *Id*. ¶ 37. There, the defendant turned 18 only 37 days before he executed a cab driver without warning or provocation. *Id*. ¶¶ 2-3, 37. In so holding, we noted, as the Supreme Court did, that the age of 18 is the line for whether *Miller* applies:

"  'Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity that some adults will never reach. For the reasons we have discussed, however, a line must be drawn. *** The age of 18 is the point where society

draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.' " *LaPointe*, 2018 IL App (2d) 160903, ¶ 36 (quoting *Roper*, 543 U.S. at 574).

Age 18 is likewise where the line for juvenile sentencing considerations rests as well (*id.*) and defendant falls on the other side of that line. Accordingly, we reject defendant's *de facto* life sentence claim.

¶ 21    We are compelled to note that even if *Miller* applied, it would not alter our review of defendant's sentence. We have carefully reviewed the transcripts of defendant's sentencing hearing and the hearing on his post-sentencing motions before Judge Hudson. The sentencing hearing was actually held on defendant's twenty-third birthday. Both the parties and the sentencing judge extensively discussed defendant's youth, his home life, his difficult upbringing, and his family situation. Defendant noted that during the nearly four-year pendency of his case, Judge Hudson had practically witnessed defendant grow up in front of him. Defendant continued to deny his involvement in the Howard Johnson shootings—in fact, as recently as 2015, he continued to maintain his innocence. It was not until his successive postconviction petition in 2019 that defendant accepted *any* responsibility for the murder of Eric Johnson and the serious, potentially fatal injuries sustained by the other three victims in that hotel room.

¶ 22    In any event, we note that Judge Hudson gave serious and thoughtful attention to the obvious sentencing issues at hand. Defendant's youth and immaturity were paramount considerations even as mandatory consecutive sentencing, the sheer number of victims, and the seriousness of these offenses, dictated that defendant would likely spend a significant amount of the remainder of his life in prison. As the Supreme Court once explained, if the defendant " 'has subjected himself to a severe penalty' " by committing multiple offenses " 'it is simply because he

has committed a great many such offen[s]es.' " (Emphasis in original.) *O'Neil v. Vermont*, 144 U.S. 323, 331 (1892) (quoting *State v. O'Neil*, 58 Vt. 140 (1886)).

¶ 23   And, even after defendant's combative statement at sentencing, in which he attacked the integrity of the proceedings, the trial court still ordered that defendant be given an opportunity to visit with his young son, and defendant repeatedly expressed his gratitude for that consideration. The sentencing court did *not* impose its sentence lightly and, were that the issue before us, we would find that the record of the sentencing judge's deliberations comported with *Miller*. See generally *Holman*, 2017 IL 120655, ¶ 26.

¶ 24   In addition, we note that in *People v. Davis*, 2014 IL 115595, the supreme court held that a criminal defendant's *de facto* life sentence claim may be barred by *res judicata* when a proportionate penalties claim had already been raised on direct appeal. *Id.* ¶¶ 42-45. And, in *Dorsey*, 2021 IL 123010, the supreme court also held that a defendant cannot show cause for failing to raise a *de facto* life sentence challenge in his original postconviction petition as Illinois courts have long recognized the special status of juvenile offenders. *Id.* ¶¶ 72-74 (citing *LaPointe*, 2018 IL App (2d) 160903, ¶ 59). Here, defendant raised a proportionate penalties claim when he challenged his sentence as excessive on direct appeal. See *People v. Martinez*, 2-04-0094, at *15-17 (2005) (unpublished order under Supreme Court Rule 23). Thus, defendant's *Miller* claim is barred. And further, even if juvenile sentencing protections applicable, defendant failed to establish cause for his failure to raise that issue in his initial postconviction petition.

¶ 25                                 III. CONCLUSION

¶ 26   In sum, defendant failed to satisfy the cause-and-prejudice test, and his putative sentencing claim is barred by *res judicata* from his direct appeal. Therefore, the trial court properly denied

defendant leave to file his successive postconviction petition. For these reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 27   Affirmed.