# Illinois Official Reports

## Appellate Court

---

### *People v. Hoover*, 2019 IL App (2d) 170070

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL D. HOOVER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0070 |
| Filed | June 12, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 93-CF-135; the Hon. John F. Joyce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Jay Wiegman, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Kwame Raoul, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of counsel), for the People. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices McLaren and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Michael D. Hoover, appeals a judgment denying him leave to file a successive petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). The proposed petition claimed that defendant's life sentence for a murder that he committed when he was 22 years old violated the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the Illinois Constitution's proportionate-penalties clause (Ill. Const. 1970, art. I, § 11). Defendant contends that he satisfied the cause-and-prejudice threshold of section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2016)) for filing a successive petition. We affirm.

¶ 2    Defendant was charged with first degree murder (Ill. Rev. Stat. 1991, ch. 38, ¶ 9-1(a)) and armed robbery (*id.* ¶ 18-2(a)), based on the events of November 12, 1992, when he, William Keene, and Anthony Ehlers entered a gun shop, killed the owner, and robbed the store. Defendant was charged as an accomplice to the murder and as a principal in the armed robbery. He initially entered a negotiated guilty plea, a condition of which was that he testify for the State at the trials of Keene and Ehlers. Defendant testified at Keene's trial but refused to testify against Ehlers. On December 22, 1993, the trial court allowed him to withdraw his guilty plea and proceed to trial.

¶ 3    The jury trial was held over three days in July 1994. The evidence established the following. On the morning of November 12, 1992, Robert Peters Sr. was found dead inside Bob's Gun Shop, in Freeport. He was lying faceup behind the counter, with a knife protruding from his neck and two gunshot wounds to his head and his chest. According to Dr. Larry Blum, who performed the autopsy, the knife cut across Peters's esophagus and severed his jugular vein.

¶ 4    In a confession, defendant said the following. The three men had formed a plan to rob the shop and shoot Peters. Two weeks before they acted, defendant surveilled the store and contacted Ehlers. A week after that, the three men settled on their plan. On November 11, 1992, they checked into a hotel near the shop. On the morning of November 12, defendant drove them to the shop, and they entered. Defendant asked Peters to show him a knife. Peters did so. Ehlers then shot Peters in the chest and the head. Keene and Ehlers took some guns and knives. Defendant took Peters's wallet from his pocket, then went to the safe. He heard one of the other men say that Peters was still alive. He then saw Keene take a knife from a cabinet and repeatedly stab Peters. Defendant took some cash and other property from the safe, and the other men took some more guns and knives. They fled.

¶ 5    In his confession, defendant stated that the three men had intended to rob and shoot Peters. Asked whether he had known that Peters would be killed, defendant replied that "it was kind of like if that's what happened it happened."

¶ 6    The jury found defendant guilty. At sentencing, the court heard the following evidence. A woman testified that in 1984 or 1985, when she was 14 years old, defendant threatened her with a knife. Another woman testified that in 1987 she had moved because defendant had been harassing her for several months. Defendant went to her new home and threatened to kill the owner if he did not let defendant see her. After she notified the police and a complaint was filed, she and her mother relocated to another city.

¶ 7    James Harnish testified that he and defendant committed numerous burglaries and vehicle thefts between 1982 or 1983 and 1989. They were convicted of three residential burglaries and an armed burglary. All of these crimes had been defendant's idea.

¶ 8    Laura Jones, at whose home defendant resided for about eight months before the Peters murder and four months afterward, testified that he had sold marijuana and cocaine from the house. He abused her physically and psychologically numerous times. In November 1992, he put a gun to her head and forced her to kneel because she had not flushed the toilet. Another time, he pinned her against a wall and choked her; when he let her go and she dropped to the floor, he kicked her several times. In January 1993, he held a gun to her head and said that he would kill her. For three weeks in August 1994, while incarcerated, he made numerous collect calls daily to her at her workplace, threatening to kill her.

¶ 9    A police officer testified that he searched defendant's storage locker in April 1993 and found a shotgun that had been sawed off to three inches less than the legal minimum.

¶ 10   In mitigation, defendant noted that he had not been involved in inflicting any of Peters's wounds, that he had testified against Keene, and that he had confessed.

¶ 11   The court sentenced defendant to an extended term of life imprisonment for first degree murder, based on the finding that the offense had been accompanied by exceptionally brutal or heinous conduct indicative of wanton cruelty (see *id.* ¶ 1005-8-1(a)(1)(b)). The court also sentenced defendant to an extended term of 50 years' imprisonment for armed robbery.

¶ 12   The court explained the sentences as follows. First, no statutory factors in mitigation applied. In particular, defendant had not led a law-abiding life for a substantial period before the offenses. In October 1987, he was convicted of battery, criminal trespass to land, and disorderly conduct. In November 1987, he was convicted of retail theft. In May 1988, he was convicted of two weapons offenses and two counts of possessing cannabis. In July 1988, he was convicted in Wisconsin of two burglaries and one armed burglary. In October 1991, he was convicted of escaping from prison. Thus, the court reasoned, defendant's character and attitude indicated that he was "very likely to commit further crimes." One nonstatutory factor in mitigation applied: defendant had testified for the State at a codefendant's trial.

¶ 13   The court turned to factors in aggravation. Defendant had a long and serious criminal history, and a lengthy sentence was needed to deter others from committing similar crimes. The court then turned to defendant's rehabilitative potential:

> "The Court notes that the Defendant is now 24 years of age. That at the time of the [Peters murder] the Defendant was 22 years of age. That at the time of the [Peters murder] the Defendant in adult court had been convicted of eight misdemeanor[s] ***, two charges of burglary, and one armed burglary. The Defendant was previously sentenced to [prison in] Wisconsin for eight years. *** The Defendant was convicted of the offense of escape in Wisconsin and was sentenced to *** 30 months in [prison] ***. The Court finds that as an adult the Defendant has had 12 convictions since he turned 17 and has served two previous terms in the Department of Corrections."

¶ 14   The court noted that defendant had been paroled from prison on August 17, 1992. Thus, he committed the Peters murder and the armed robbery fewer than 90 days after being released, and he had planned the crimes even earlier. The court stated, "[T]he rehabilitative potential of the Defendant is almost nill [*sic*]."

¶ 15    The court observed that, when he entered the shop, defendant was aware that Peters was going to be shot and killed. Peters was shot twice, and while he was still alive, Keene "cold-bloodedly, brutally, cruelly cut [his] throat." There was "no better example of what could be considered as grossly ruthless, devoid of any kind of mercy or compassion, in fact, cruel and cold-blooded."

¶ 16    On appeal, defendant contended in part that his life sentence for murder was excessive in view of his conviction as an accomplice only and his testimony against Keene. He also contended that his extended-term sentence for armed robbery was legally erroneous. We reduced his sentence for armed robbery to 30 years but otherwise affirmed. *People v. Hoover*, 285 Ill. App. 3d 1102 (1996) (table) (unpublished order under Illinois Supreme Court Rule 23). Explaining our refusal to modify his sentence for murder, we noted the gratuitous cruelty of the murder, defendant's major role in planning and facilitating the crime, and the ample precedent for sentencing an accomplice to life based on the brutal or heinous conduct of the principal. *Hoover*, slip order at 66-70.

¶ 17    In 2008, defendant petitioned under the Act, claiming that his life sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The trial court dismissed the petition summarily. We affirmed, as *Apprendi* did not apply retroactively to a collateral proceeding. *People v. Hoover*, 399 Ill. App. 3d 1234 (2010) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 18    On November 30, 2016, defendant moved under section 122-1(f) of the Act for leave to file a successive petition. Section 122-1(f) reads:

"Only one petition may be filed by a petitioner *** without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2016).

¶ 19    Defendant's proposed petition claimed that the law allowing a life sentence for first degree murder was unconstitutional as applied under both the eighth amendment and the proportionate-penalties clause. The petition relied on *Miller v. Alabama*, 567 U.S. 460 (2012), which held that sentencing one who was under 18 years old when he offended to mandatory life imprisonment without parole violates the eighth amendment. Defendant contended that, although he had been 22 when he offended and his life sentence was discretionary, the "principle" of *Miller*, that juveniles and "young adults" are different from mature adults for sentencing purposes, still applied. He noted that in *People v. House*, 2015 IL App (1st) 110580, *vacated*, No. 122134 (Ill. Nov. 28, 2018), the court had applied *Miller* to invalidate a mandatory life sentence for a 19-year-old who was convicted of murder under an accountability theory.

¶ 20    Defendant contended that he had satisfied the "cause" requirement of section 122-1(f) in that *Miller* and *House* were decided long after the proceedings on his first petition. He contended that he had satisfied the "prejudice" requirement because, in light of the "new

substantive rule" of *Miller*, the trial court would have been required to consider his relative youth and likely would have imposed a shorter sentence.

¶ 21    The trial court denied defendant's motion and his motion to reconsider. He timely appealed.

¶ 22    On appeal, defendant originally argued that he satisfied section 122-1(f)'s requirements for both his federal and state constitutional claims. After he filed his initial brief, however, our supreme court issued *People v. Harris*, 2018 IL 121932, which held that *Miller* does not apply to anyone who was 18 years of age or older when he offended. *Id.* ¶¶ 60-61. Thus, in his reply brief, defendant abandoned his eighth-amendment claim. On our *de novo* review (see *People v. Gillespie*, 407 Ill. App. 3d 113, 124 (2010)), we limit ourselves to the proportionate-penalties claim.

¶ 23    As pertinent here, the proportionate-penalties clause states, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Defendant contends that he satisfied the cause-and-prejudice test for his claims that (1) the trial court violated the clause by failing to take into account his youth at the time of his offense and (2) his life sentence violated the clause because it denied him the opportunity to restore himself to useful citizenship.

¶ 24    We disagree with defendant. Our opinion in *People v. LaPointe*, 2018 IL App (2d) 160903, controls this case. We therefore explain it in depth.

¶ 25    In *LaPointe*, the defendant was convicted of a first degree murder that he committed when he was 18 years and 37 days old. Based on a finding that the offense, the premeditated shooting of a taxicab driver, had been accompanied by exceptionally brutal or heinous conduct, the trial court sentenced him to life imprisonment without the chance of parole. On his direct appeal, this court reduced his sentence to 60 years, the maximum nonextended term. We relied in part on defendant's only prior conviction being of burglary and his drug problems and difficult upbringing. *People v. LaPointe*, 85 Ill. App. 3d 215, 222 (1980). We also relied on the proportionate-penalties clause, reasoning that the trial court had considered the seriousness of the offense but not the possibility that the defendant could eventually be restored to useful citizenship. *Id.* at 224.

¶ 26    The supreme court reinstated the life sentence. It stated that the proportionate-penalties clause had not required the trial court to make specific findings about the defendant's rehabilitative potential or to detail for the record how it had decided that the life sentence was appropriate. *People v. LaPointe*, 88 Ill. 2d 482, 493 (1981). Moreover, it noted that the trial court had specifically rejected any argument that the defendant's offense resulted from circumstances that were unlikely to recur or that his character and attitude indicated that he was unlikely to commit another crime. *Id.* Next, the court disagreed with our statement that the defendant lacked a significant criminal history; in addition to the burglary conviction, he had possessed and used illegal drugs over two or three years and had solicited a friend to assist him in a robbery and to sneak drugs into jail. *Id.* at 494. Finally, the trial court had not abused its discretion in applying the "brutal or heinous" enhancement; the defendant had a significant criminal history, his crime was premeditated and cold-blooded, and he had shown a lack of remorse while awaiting trial. *Id.* at 501.

¶ 27    The defendant filed two petitions under the Act, one in 2002 and the other in 2011. Both claimed ineffective assistance of counsel. The first was summarily dismissed; this court affirmed. *People v. LaPointe*, 341 Ill. App. 3d 1118 (2003) (table) (unpublished order under

Illinois Supreme Court Rule 23). The second was denied after an evidentiary hearing; this court affirmed. *People v. La Pointe*, 2015 IL App (2d) 130451.

¶ 28 In 2016, the defendant again sought leave to file a successive petition, this time to contend that his life sentence violated the eighth amendment and the proportionate-penalties clause. Specifically, his proposed petition alleged first that his sentence violated *Miller* even though he had turned 18 shortly before his crime. *LaPointe*, 2018 IL App (2d) 160903, ¶ 19. The proposed petition did not explicitly and directly allege that the sentence violated the proportionate-penalties clause, but, on appeal, we construed it as having done so. *Id.* ¶ 49.

¶ 29 The defendant alleged that he satisfied section 122-1(f)'s cause requirement because *Miller* had not been decided when he litigated his earlier petitions. He also alleged that he had satisfied the prejudice prong because he had alleged that the sentencing judge had failed to consider the factors that *Miller* required. The trial court denied the motion, and the defendant appealed.

¶ 30 On appeal, we held first that the eighth-amendment claim necessarily failed because *Miller* created a bright-line rule limiting its holding to those who were under 18 years old when they offended. *Id.* ¶¶ 36-37; see *Miller*, 567 U.S. at 465.

¶ 31 We then turned to the defendant's proportionate-penalties-clause claim. We assumed for purposes of the appeal that the clause is not merely coextensive with the eighth amendment but provides additional protections to defendants. *LaPointe*, 2018 IL App (2d) 160903, ¶¶ 51-54; see *People v. Patterson*, 2014 IL 115102, ¶ 106 (clauses are "co-extensive"); *People v. Clemons*, 2012 IL 107821, ¶ 40 (proportionate-penalties clause is broader than eighth amendment). We held that, for a variety of reasons, the claim failed both the cause and prejudice prongs.

¶ 32 First, we turned to the cause prong. We noted that the defendant could have raised the proportionate-penalties claim in his original petition, as the clause was "very much in existence then" and the proposition that a defendant's youth is pertinent to sentencing was well established. *LaPointe*, 2018 IL App (2d) 160903, ¶ 55. Indeed, we noted, the argument had been available at his trial and on direct appeal, and on both occasions he had actually argued that the proportionate-penalties clause militated against a life sentence. *Id.*

¶ 33 We rejected the defendant's assertion that the unavailability of *Miller* at the time of the first postconviction proceeding meant that his claim was unavailable. The defendant's claim rested not on the substantive rule of law that *Miller* created but only on "some of the *support* that the [*Miller*] Court found for the new rule," *i.e.*, recent scientific research that "add[ed] to the received wisdom in favor of according a defendant's youth great weight in sentencing." (Emphasis in original.) *Id.* ¶ 58.

¶ 34 We turned next to the prejudice prong. We explained first that the Act is limited to claims of constitutional deprivations (see 725 ILCS 5/122-1(a)(1) (West 2016); *People v. Whitfield*, 217 Ill. 2d 177, 181 (2005)) and that, properly understood, the claim was not of that ilk:

> "Although it invoked the proportionate-penalties clause, the proposed petition alleged only that the trial court ignored the factors of youth and rehabilitative potential that the clause required it to consider. That fell short of contending that the life sentence itself violated the clause by being disproportionate to the offense. Once it is acknowledged that defendant's proportionate-penalties claim is not truly a *Miller* claim, there is nothing constitutional about it." *LaPointe*, 2018 IL App (2d) 160903, ¶ 61.

¶ 35    We next noted a second reason why the claim failed the prejudice prong: it was barred by forfeiture and *res judicata*. On the first score, the defendant could have raised the claim on direct appeal. *Id.* ¶ 62. On the second score, on direct appeal, the supreme court in essence did consider the claim and rejected it. The court did not even consider the life sentence an abuse of discretion, much less a constitutional violation. *Id.* ¶ 63; see *LaPointe*, 88 Ill. 2d at 493.

¶ 36    Third, we noted, insofar as the proposed petition had raised a genuine claim of a proportionate-penalties violation, it was wholly insufficient. The supreme court's 1981 opinion bound us to that conclusion. *LaPointe*, 2018 IL App (2d) 160903, ¶ 65. Further, we distinguished two opinions on which the defendant relied. In *House*, a murder case, the 19-year-old defendant acted as a lookout for the actual killers, and his life sentence had been mandated by statute; in *LaPointe*, the defendant was the principal in a premeditated murder, and the sentence was discretionary. *Id.* In *People v. Harris*, 2016 IL App (1st) 141744, *aff'd in part and rev'd in part*, 2018 IL 121932, the defendant received an aggregate 76-year sentence for one murder and one attempted murder, both committed as a principal. Relying partly on *House*, the appellate court held that the sentence violated the proportionate-penalties clause because a *de facto* life sentence imposed on one who had turned 18 a few months before the offenses, had committed no prior crimes, and showed some rehabilitative potential " 'shock[ed] the moral sense of the community.' " *LaPointe*, 2018 IL App (2d) 160903, ¶ 67 (quoting *Harris*, 2016 IL App (1st) 141744, ¶ 69). By contrast, we noted, the defendant in *LaPointe* had a substantial history of criminal and antisocial acts. Also, we agreed with the partial dissent in *Harris* that the majority's reliance on *House* ignored the great difference between acting as a lookout for the killers and actually killing with premeditation. *Id.* ¶ 69; see *Harris*, 2016 IL App (1st) 141744, ¶ 85 (Mason, J., concurring in part and dissenting in part).

¶ 37    We now apply *LaPointe* here. We hold first that defendant's claim failed the cause prong of section 122-1(f). As in *LaPointe*, the proportionate-penalties claim could have been raised in defendant's first petition under the Act. The clause was in existence then and the principle that a defendant's youth is relevant to sentencing was well established. The claim was not created by *Miller* any more than was the claim in *LaPointe*.

¶ 38    We hold second that the claim failed the prejudice prong of section 122-1(f). Again, we follow *LaPointe*. First, as in *LaPointe*, defendant's primary contention, that the trial court erred by failing to consider his youth at the time of the offense, did not raise a genuine claim of a *constitutional* deprivation. It merely amounted to a contention that the court abused its sentencing discretion. That was not the same as contending that defendant's life sentence itself was so disproportionate to his offense as to violate the constitutional prohibition. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 61.

¶ 39    We note parenthetically that the proposed petition's assertion that the trial court ignored his relative youth is severely undercut by the record. The court specifically stated that defendant was 22 years old when he committed the offenses. The court also stated that defendant's substantial record of criminal and antisocial behavior as an adult and the circumstances of the murder and armed robbery demonstrated that his rehabilitative potential was almost nil. Thus, there is no basis to assume that the court ignored the factor that defendant asserts it did; as in *LaPointe*, the court was not required to detail on the record all of the considerations that it weighed in deciding on the sentence. See *LaPointe*, 88 Ill. 2d at 493.

¶ 40        Second, as was true of the claim in *LaPointe*, defendant's claim could have been raised on his direct appeal. Thus, it was barred by forfeiture. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 62.

¶ 41        Third, insofar as the proposed petition did raise a genuine claim under the proportionate-penalties clause, the claim was so lacking in arguable merit that its absence in the original proceeding did not work any prejudice to defendant. As pertinent here, a sentence does not violate the clause unless it is " 'cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community.' " *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005) (quoting *People v. Moss*, 206 Ill. 2d 503, 522 (2003)).

¶ 42        It cannot be seriously contended that defendant's life sentence was wholly disproportionate to his offense, if indeed it was disproportionate at all. Surely if LaPointe's sentence failed this high standard (as the supreme court held that it did), then so must defendant's sentence. Although LaPointe was convicted as the principal and lone offender and defendant as an accomplice, that difference is of limited significance. As the trial court and this court noted previously, defendant's role in planning and facilitating the murder was both extensive and crucial. Both murders met the "exceptionally brutal or heinous" standard, but the murder of Peters was especially prolonged and sadistic. Further, LaPointe was 18 at the time of his offense and had only one felony conviction; defendant was 22 and had a total of 12 convictions, including 4 felonies. The trial court reasonably found that his rehabilitative potential was almost nil. Not only was defendant's sentence no shock to the moral sense of the community, it was not even an abuse of discretion—as we held on his direct appeal.

¶ 43        We conclude that defendant's motion did not satisfy either the cause or prejudice prong of section 122-1(f) of the Act. Therefore, the trial court correctly denied it.

¶ 44        We affirm the judgment of the circuit court of Stephenson County.

¶ 45        Affirmed.