# Illinois Official Reports

## Appellate Court

---

### *People v. Mauricio*, 2021 IL App (2d) 190619

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HECTOR M. MAURICIO, Defendant-Appellant. |
| District & No. | Second District<br>No. 2-19-0619 |
| Filed | August 6, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-1516; the Hon. Kathryn Karayannis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Vicki P. Kouros, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Miles J. Keleher, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices McLaren and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    After pleading guilty to two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2010)), defendant, Hector M. Mauricio, was sentenced to 55 years in prison. Defendant directly appeals from his sentence, arguing that his 55-year sentence is unconstitutional under the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution and, alternatively, that his sentence is excessive. We determine that it is neither unconstitutional nor excessive. Accordingly, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    In the early morning hours of May 29, 2007, defendant, then age 20, was arrested outside the home of the 83-year-old victim, Roscoe Ebey.[1] After entering the home, police discovered Ebey's body on the floor of his bedroom. An autopsy report later identified that Ebey sustained 79 total injuries, including 74 knife wounds and a postmortem burn.

¶ 4    On September 9, 2010, several days before his trial was scheduled to begin, defendant pled guilty, unconditionally, to two charges of first degree murder. In the subsequent sentencing hearing, the circuit court declined to impose natural life or an extended-term sentence and instead sentenced defendant to 60 years in prison.

¶ 5    On appeal, we determined that the circuit court based the 60-year sentence, in part, on Ebey's personal traits, which was an improper aggravating factor. *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 20. We held that the record did not demonstrate that the trial court's consideration of this improper factor did not lead to a greater sentence. *Id.* ¶ 21. Thus, we vacated the 60-year sentence and remanded the matter for resentencing, with all proper factors to be weighed anew. *Id.* ¶ 23.

¶ 6    At a multi-day resentencing hearing, the State presented evidence in aggravation, including testimony from 15 witnesses and transcripts of 3 witnesses who had testified at the previous sentencing hearing. Defense counsel presented evidence in mitigation, including testimony from seven witnesses and transcripts of two witnesses from the previous sentencing hearing.

¶ 7    Dr. James Garbarino, an expert in developmental psychology who had been retained for defendant's original sentencing hearing, was again retained for the resentencing hearing. After interviewing defendant and reviewing defendant's personal and criminal history, Dr. Garbarino prepared a report for the court and testified for the defense at the resentencing hearing. Dr. Garbarino particularly focused on defendant's traumatic childhood experiences and how those experiences may have impacted defendant.

¶ 8    The court heard defendant's statement in allocution and arguments from both sides as to whether defendant's acts constituted "exceptionally brutal and heinous behavior indicative of wanton cruelty," which would make him eligible for a natural life or extended-term sentence. In closing arguments, the State asserted that defendant's history of prior delinquency was an aggravating factor, noting that it was "not a minor history" and that "two prior sentences to the Illinois Department of Corrections [were] not enough to get [defendant] to change his ways." The State further argued that there was no evidence to support the contention that "the character

---

[1]We note a spelling discrepancy in the transcripts, where the victim's last name is misspelled as "Eby." For consistency, we use "Ebey" throughout.

and attitudes of the [d]efendant indicate that he's unlikely to commit another crime." Defense counsel emphasized defendant's relative youth and rehabilitative potential, referring to him several times as a "20-year-old boy" at the time of the offense and arguing that he could someday become a productive member of society.

¶ 9 Before sentencing defendant, the court stated:

"[T]he Court has considered all of the admitted exhibits, testimony and evidence heard during this multi-day sentencing hearing including the written transcripts ***. The Court has considered all of the information contained in the PSI and its attachments, including the victim impact statements of [Ebey's family]. The Court has considered [defendant's] statement in allocution and the arguments made by Counsel and the case law relied upon by Counsel. The Court has considered the financial impact and cost of incarceration.

The Court finds no applicable statutory factors in mitigation. Nonstatutory factors in mitigation the Court finds applicable are that [defendant] was raised in what Dr. Garbarino terms an urban war zone with an alcoholic mother and with no father or male role model present. His father is a convicted murderer, the eldest brother being the victim of the father, and [defendant's] older brother is a convicted violent felon. Further, this Court finds mitigating [defendant's] alcohol abuse, that he has admitted his guilt and has expressed remorse in this case, that he has obtained his GED and that he appears to be continuing to work on himself while he has been incarcerated.

The Court finds that the statutory factors in aggravation that apply are Paragraphs 3 [defendant's prior delinquency or criminal activity], 7 [the sentence is necessary to deter others from committing the same crime] and 8 [defendant committed the offense against a person 60 years of age or older].

Further, the Court finds that [defendant's] acts constitute exceptionally brutal and heinous behavior indicative of wanton cruelty with 79 overall injuries to Mr. [Ebey] coupled with the lack of provocation and total senseless nature of this murder."

The court then identified the sentencing range before sentencing defendant to 55 years in prison, with credit for all the time he already served.

¶ 10 Following the resentencing, defendant filed a motion for leave to withdraw his guilty plea and vacate the judgment and/or reconsider his sentence. The circuit court denied the motion, and defendant timely appealed. This court summarily remanded the appeal for a valid Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) certificate. Following the remand, defendant filed an amended motion for leave to withdraw his guilty plea and vacate the judgment and/or reconsider his sentence. The circuit court denied that motion, stating that the judge who had issued the 55-year sentence had "properly considered both aggravating and mitigating factors, statutory and nonstatutory, when sentencing *** defendant" and that it found "no basis to reconsider *** defendant's sentence." Defendant's appeal of this decision is before us now.

¶ 11 II. ANALYSIS

¶ 12 Defendant raises two issues in the present appeal. First, defendant argues that his sentence is unconstitutional under the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. Second, and alternatively, he argues

that his sentence is excessive. We address each issue in turn.

¶ 13                             A. Defendant's Constitutional Challenges

¶ 14        Defendant first contends that his sentence is unconstitutional under the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution as applied to him. An as-applied constitutional challenge to a sentence is a legal question that is reviewed *de novo*. *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 97.

¶ 15        In *People v. Harris*, 2018 IL 121932, ¶ 38, our supreme court explained that an as-applied challenge requires a showing that the law is unconstitutional as it applies to the specific facts and circumstances of the challenging party. "All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge." *Id.* ¶ 39. It is therefore paramount that the record is sufficiently developed in terms of those facts and circumstances for purposes of appellate review. *Id.*

¶ 16        Defendant acknowledges that he did not raise these constitutional challenges in the court below, but he argues that, in the interests of judicial economy, this court should waive forfeiture of the claims because there is a sufficiently developed record. In addition, defendant notes that his amended motion to reconsider the sentence argued that the 55-year sentence "did not reflect a consideration of [defendant's] rehabilitative potential," which "makes the same basic point" as his constitutional challenges. In response, the State initially argues that this court should decline to consider the as-applied constitutional challenge because defendant did not raise the challenge in the circuit court. In the alternative, the State argues that the record on appeal is sufficiently developed for this court to reject the constitutional challenges outright. Because the record before us is sufficiently developed with the necessary facts and circumstances for our review, we will waive forfeiture and address the merits of defendant's claims.

¶ 17        Defendant first argues that his sentence is unconstitutional under the eighth amendment to the United States Constitution, as construed by *Miller v. Alabama*, 567 U.S. 460, 465 (2012). He specifically argues that recent changes to statutes and case law support his position that a young adult may challenge a sentence under *Miller*. We disagree.

¶ 18        In *Miller*, the United States Supreme Court held that a mandatory sentence of life without parole for offenders who were under the age of 18 at the time of the offense violates the eighth amendment's prohibition on cruel and unusual punishments. *Id.* at 489. In *Montgomery v. Louisiana*, 577 U.S. 190, 206 (2016), the Court established that *Miller* applied retroactively in cases on collateral review. The Court most recently clarified that sentencing courts need not make a finding of permanent incorrigibility before imposing a discretionary life sentence on a juvenile homicide offender. *Jones v. Mississippi*, 593 U.S. ___, ___, 141 S. Ct. 1307, 1318-19 (2021).

¶ 19        Our supreme court has interpreted *Miller* to determine that it is unconstitutional for a court to impose a discretionary life sentence on a juvenile defendant without first considering the defendant's "youth and its attendant characteristics" (*People v. Holman*, 2017 IL 120655, ¶ 40) and that a prison sentence longer than 40 years is a *de facto* life sentence (*People v. Buffer*, 2019 IL 122327, ¶ 41). To date, our supreme court has never extended the reasoning of *Miller* to defendants over the age of 18.

¶ 20        In *Harris*, the court explained that the United States Supreme Court "has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the

- 4 -

age of 18" and that, in *Miller*, the Court "again confirmed that the age of 18 is the legal line separating adults from juveniles." *Harris*, 2018 IL 121932, ¶ 58. *Harris* went on to note that "the line drawn by the Supreme Court at age 18 was not based primarily on scientific research" (*id.* ¶ 60) and that "claims for extending *Miller* to offenders 18 years of age or older have been repeatedly rejected" (*id.* ¶ 61). In addition, we have explicitly and repeatedly held that "*Miller* created a bright-line rule limiting its holding to those who were under 18 years old when they offended" (*People v. Hoover*, 2019 IL App (2d) 170070, ¶ 30) and that "*Miller* simply does not apply to a sentence imposed on one who was at least 18 at the time of his offense" (*People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 47).

¶ 21 Here, defendant argues that we should apply the reasoning in *Miller* in reviewing his sentence because "new research has led to calls for change in sentencing procedures" and that "[t]hese calls for change have been heeded." Specifically, defendant cites the recent changes to the Uniform Code of Corrections (Code), wherein the legislature established a parole review for offenders who committed crimes before the age of 21. See 730 ILCS 5/5-4.5-115(b) (West 2020); see also Pub. Act 100-1182, § 5 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110); Pub. Act 101-288, § 10 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110 and renumbering as 730 ILCS 5/5-4.5-115). However, as we stated in *People v. Kulpin*, 2021 IL App (2d) 180696, ¶ 62, "it is the function of the legislature, not the courts, to declare the public policy of this state. [Citation.] Consequently, *** if *Miller* is to be extended to persons over age 18, it is the legislature that should make that change." Because "new research [is] not a new rule of law," we will not apply *Miller* to defendant's sentence. See *LaPointe*, 2018 IL App (2d) 160903, ¶ 58 (holding new developments in brain research do not "create a constitutional right where none had existed before or impose new limits on the substantive law").

¶ 22 Defendant also asserts that *Harris*, 2018 IL 121932, and *People v. House*, 2019 IL App (1st) 110580-B, *appeal allowed*, No. 125124 (Ill. Jan. 29, 2020), support his position that a young adult may raise an as-applied eighth-amendment challenge to a sentence. Again, we disagree.

¶ 23 *Harris* provides a basis for defendant's eighth amendment claim only through implication—*Harris* merely "suggested that an as-applied challenge under *Miller* had not been foreclosed." *People v. Bland*, 2020 IL App (3d) 170705, ¶ 13. After *Harris*, the First District considered a 19-year-old defendant's claim that his mandatory life sentence was unconstitutional. Although the court granted relief, it did so under the proportionate penalties clause, not under the eighth amendment. *House*, 2019 IL App (1st) 110580-B, ¶ 72. To the extent that *House* relied on *Miller* to grant relief to the defendant, this district rejects the reasoning of that decision. As stated above, this district has consistently rejected the proposition that courts might selectively apply *Miller* to young adults, and we will not deviate from our stance here. See, *e.g.*, *Kulpin*, 2021 IL App (2d) 180696, ¶ 62 (declining to apply *Miller* to a 20-year-old defendant); *People v. Anderson*, 2021 IL App (2d) 191001, ¶ 25 (21-year-old defendant); *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 35 (23-year-old defendant); *Hoover*, 2019 IL App (2d) 170070, ¶¶ 37-39 (22-year-old defendant).

¶ 24 Because the record shows that defendant was 20 years old at the time of the offense, and thus not a juvenile subject to *Miller* and its progeny, his 55-year prison sentence is not unconstitutional under the eighth amendment.

¶ 25 Second, defendant argues that his sentence violates the proportionate penalties clause of the Illinois Constitution because his sentence "shocks the moral sense of the community, given

[his] relative youth, traumatic childhood, and drug and alcohol problems." In support of his assertion, defendant again references the recent change in the Code, arguing that the spirit of the law reflects a shift of the moral sense of the community.

¶ 26 The proportionate penalties clause states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To succeed on a proportionate penalties claim, "the defendant must demonstrate either that the penalty is degrading, cruel 'or so wholly disproportionate to the offense that it shocks the moral sense of the community' or that another offense containing the same elements has a different penalty." *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69 (quoting *People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009)).

¶ 27 Here, defendant attempts to equate the recent change in the Code to a change in the moral sense of the community. The Code now provides that

"[a] person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board after serving 20 years or more of his or her sentence or sentences, *except for those subject to a term of natural life imprisonment under Section 5-8-1 of this Code* or any person subject to sentencing under subsection (c) of Section 5-4.5-105 of this Code." (Emphasis added.) 730 ILCS 5/5-4.5-115(b) (West 2020).

¶ 28 Defendant's argument fails for two reasons. First, as defendant recognizes, the change of the law does not apply to him, as he was sentenced before its enactment. Second, and more importantly, the legislature, in amending the statute, chose to exclude young adult offenders guilty of first degree murder when "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." *Id.* § 5-8-1(a)(1)(b).

¶ 29 The sentencing judge made a finding of exceptionally brutal and heinous behavior indicative of wanton cruelty. As a finding of fact, this determination will not be reversed unless it is against the manifest weight of the evidence. See *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 13; *People v. Deleon*, 227 Ill. 2d 322, 331-32 (2008). Defendant was eligible for a natural-life or extended-term sentence based not only on a finding of wanton cruelty but also because the victim was 83 years old. See 730 ILCS 5/5-5-3.2(a)(8) (West 2014). In addition to these aggravating factors, the sentencing court fully considered all mitigating factors, as discussed below. In light of both the aggravating and mitigating factors in this case, we are not persuaded that a discretionary sentence of 55 years "shocks the moral sense of the community." As such, the sentence is not unconstitutional under the proportionate penalties clause.

¶ 30 Because defendant's as-applied arguments fail under both the eighth amendment and the proportionate penalties clause, we conclude that the 55-year sentence is not unconstitutional.

¶ 31 B. Defendant's Excessive Sentence Challenge

¶ 32 In the alternative, defendant argues that his sentence should be reduced because it is excessive. In support of his argument, defendant asserts that the circuit court "did not consider *** that [defendant] was only 20 years old at the time of the offense" and failed "to account for [defendant's] relative youth in mitigation as evidence of his rehabilitative potential." Defendant details all of the nonstatutory factors in mitigation that the circuit court considered.

He asserts that the circuit court should have concluded from these nonstatutory factors that defendant was unlikely to commit another crime, which is a statutory mitigating factor. Thus, according to defendant, the circuit court erred in finding that no statutory mitigating factor applied. In response, the State argues that the circuit court "properly considered all relevant mitigating and aggravating factors in determining an appropriate sentence, including those raised by defendant in this appeal." The State also argues that the record does not support defendant's contention that he was unlikely to commit another crime. We agree with the State.

¶ 33 While Illinois Supreme Court Rule 615(b)(4) grants a reviewing court the power to "reduce the punishment imposed by the trial court," a reviewing court "may not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A court's sentencing decision is entitled to great deference because the judge " 'has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. [Citation.]' " *Id.* at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). In the weighing of factors, "a trial court is not required to give a defendant's rehabilitative potential more weight in its sentencing decision than it gives the seriousness of the offense. [Citation.] In fact, the seriousness of the offense has been called the most important factor to consider in imposing sentence." *People v. Spencer*, 229 Ill. App. 3d 1098, 1102 (1992). When a sentence is within the statutory limits, as is the case here, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 31.

¶ 34 We turn first to defendant's assertion that the circuit court failed to consider his relative youth and rehabilitative potential. In the transcript from the final day of the sentencing hearing, the circuit court stated that it had considered "all of the admitted exhibits, testimony and evidence heard during this multi-day sentencing hearing including written transcripts" and "all of the information contained in the PSI and its attachments," along with "[defendant's] statement in allocution and the arguments made by Counsel and the case law relied upon by Counsel."

¶ 35 The record shows that defendant's age at the time of the offense and rehabilitative potential were both squarely before the circuit court at the time of the resentencing hearing. For instance, just before sentencing, defense counsel argued that defendant's relative youth constituted a nonstatutory mitigating factor, reiterating several times that defendant was a "20-year-old boy" at the time of the offense. Counsel also addressed defendant's rehabilitative potential, asserting that defendant could become a productive member of society. The transcript from the sentencing hearing shows that the circuit court gave particular consideration to the findings of Dr. Garbarino, whose report and testimony addressed defendant's traumatic childhood experiences as well as defendant's relative youth and potential for rehabilitation. As the court began listing nonstatutory mitigating factors, it stated that defendant "was raised in what Dr. Garbarino terms an urban war zone with an alcoholic mother and with no father or male role model present." After mentioning several more traumatic events from defendant's childhood, the circuit court listed three additional nonstatutory mitigating factors: defendant's alcohol abuse, defendant's admission of guilt and expressions of remorse, and defendant's rehabilitative potential—specifically noting that defendant had obtained his GED and that "he

- 7 -

appears to be continuing to work on himself while he has been incarcerated." We conclude from the record that the circuit court did consider defendant's relative youth and rehabilitative potential before sentencing.

¶ 36     We turn next to defendant's assertion that the circuit court should have determined that defendant was unlikely to commit another crime, which is a statutory factor in mitigation. Defendant merely states that the circuit court would have come to a different conclusion on this issue if it had "synthesize[d] [defendant's] traumatic upbringing and self-medication with his ongoing efforts to process his trauma and address his drug and alcohol issues." The question of defendant's likelihood to commit another crime was directly addressed at the sentencing hearing, where the State argued that defendant's history of prior delinquency was an aggravating factor, noting that it was "not a minor history" and that "two prior sentences to the Illinois Department of Corrections [were] not enough to get [defendant] to change his ways." The State went on to argue that there was no evidence to support the contention that "the character and attitudes of the [d]efendant indicate that he's unlikely to commit another crime." The circuit court subsequently held that defendant's history of prior delinquency was one of several aggravating factors and that no statutory factors in mitigation applied.

¶ 37     Because the record shows that the circuit court did indeed consider all mitigating factors raised by defendant in this appeal, we conclude that defendant's excessive sentence argument is essentially an assertion that the circuit court did not give sufficient weight to mitigating factors. However, as stated above, a reviewing court must not substitute its judgment for that of the circuit court merely because it would have weighed these factors differently, and a defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. Because the circuit court's discretionary 55-year sentence is not greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense, we reject defendant's argument that his sentence is excessive.

¶ 38                                    III. CONCLUSION
¶ 39     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 40     Affirmed.