**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200526-U

Order filed March 1, 2023_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 3rd Judicial Circuit, Rock Island County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-20-0526 |
| v. | ) | Circuit No. 05-CF-72 |
| | ) | |
| SARAH A. KOLB, | ) | Honorable |
| | ) | Gregory G. Chickris, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Holdridge and Justice Hettel concurred in the judgment.

**ORDER**

¶ 1     *Held*: Petitioner failed to make a substantial showing that the sentencing court imposed a sentence in violation of the eighth amendment under *Miller v. Alabama*, 567 U.S. 460 (2012), and failed to allege facts showing her delay in raising her proportionate penalties claim was not due to culpable negligence. Dismissal of postconviction petition affirmed.

¶ 2     Petitioner, Sarah A. Kolb, appeals from the second stage dismissal of her postconviction petition. She alleged that, following her conviction for first-degree murder and concealment of homicidal death, the sentencing court failed to adequately consider her youth and imposed a *de*

*facto* life sentence without finding her permanently incorrigible, thus violating the eighth amendment of the United States Constitution. On appeal, she adds that the sentencing court also violated the proportionate penalties clause of the Illinois Constitution. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Petitioner was tried and convicted for the 2005 murder of Adrienne Reynolds. The testimony at trial revealed that petitioner and a classmate (Cory Gregory) beat the victim, strangled her to death, and disposed of the body on the farm of petitioner's grandfather. A jury found her guilty of first-degree murder and concealment of homicidal death. 720 ILCS 5/9-1(a)(1) (West 2004); *id.* § 9-3.1(a). At the time of the crimes, defendant was 16 years old.

¶ 5        The case proceeded to a sentencing hearing. In aggravation the State called one witness who testified he saw petitioner threaten the victim with a knife on an earlier occasion. The victim's father and stepmother gave victim impact statements. In mitigation the defense called several witnesses, including family, friends, and others, who spoke on defendant's behalf. Witnesses testified that petitioner was a supportive friend and a good student, and also that she suffered abuse from family and peers. Petitioner submitted 25 letters in mitigation and gave a statement in allocution expressing regret.

¶ 6        The court considered the arguments of counsel, petitioner's statement in allocution, the Presentence Investigation Report (PSI), the case law presented, and the witness testimony, then gave its findings. Considering the factors in mitigation, the court noted that petitioner's conduct caused serious harm to another, petitioner did not act under provocation, and there were no grounds tending to excuse or justify petitioner's conduct. While the codefendant, Gregory, assisted

petitioner, the court heard testimony that he "would do anything that [petitioner] would want him to do," they worked together, and "he took a side," meaning he took petitioner's side.

¶ 7       The PSI indicated petitioner had no criminal history aside from a traffic citation, which the court found mitigating, stating, "the court must consider that along with the youth of the child[.]" However, the court concluded from the evidence that petitioner's criminal conduct was likely to recur, "particularly if [petitioner] gets angry at you." The court acknowledged that petitioner apologized and stated, "I will take you at your word but there are *** serious consequences in this case." The court also noted petitioner was not mentally impaired as defined by the Criminal Code.

¶ 8       As for aggravation, the court stated that protection of the public was "a serious consideration": "The killing was for nothing. It was because you were angry at someone." Petitioner wrote about her desire to kill the victim in her journal. She told a classmate that she intended to harm the victim: "She says I am going to use it, and I am going to take her out to a park or a farm and you're not going to hear from her anymore." The court characterized petitioner's actions as "cold and callous" and stated she was the aggressor.

¶ 9       Recounting petitioner's admissions to her peers, the court remarked petitioner "was very nanshalaunt [*sic*] about it, not seeming to care, but she made these admissions." The court noted that petitioner directed two of her friends to help dismember and dispose of the victim's body; she "did not care, she was covering her tracks." The dismemberment showed she had "a cold and callous nature." The court continued, "I see her as a cold and callous person. And you're not going to change that from what I see. I would think someone that had kill[ed] someone would be crying and running to her family, running to the police, running to somebody, and she had opportunity. She had opportunity to do that but she did not." While Gregory was equally accountable, the murder would not have occurred but for petitioner.

¶ 10    The court summarized other mitigating factors before reaching its sentence:

"[S]he is young. Have to look at rehabilitation potential. I have to look at her lack of criminal record. You know, background, all of these factors. There is no question that the people that testified here on your behalf are good people here. They said good things about you. And the court weighs that in these factors.

But, accordingly, looking this case over I believe to set a minimum sentence in this case is to send the wrong message to this community, and I don't think I am protecting the community very well if I send a minimum sentence. It's not a maximum sentence case either. I understand the emotions of the people but the court must deal in realities here and what the law says and I understand the positions of the people here."

The court sentenced petitioner to 48 years' imprisonment with 3 years' mandatory supervised release on the first-degree murder conviction, plus 5 years for the concealment-of-homicidal-death conviction to be served consecutively. Petitioner filed a motion to reconsider sentence, arguing, in part, that her sentence "does not allow for rehabilitation" and "does not take into consideration the age and mental development of [petitioner]." At the hearing on the motion, defense counsel declined to expand on the written motion ("I'm not going to make any additional argument."). The court denied the motion to reconsider sentence.

¶ 11    Petitioner filed a direct appeal. This court affirmed. *People v. Kolb*, No. 3-06-0856 (2008) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12    In 2018, petitioner filed a *pro se* postconviction petition. Although the minimum sentence for her convictions was 22 years (20 years for first-degree murder plus 2 years, mandatorily consecutive, for concealment of homicidal death), the trial court sentenced her to 53 years. See 730 ILCS 5/5-8-1(a)(1)(a), (a)(6); 5-8-4(a)(v) (West 2004). She asserted that the trial court failed

4

to properly consider her youth and its attendant circumstances when it sentenced her to a *de facto* life sentence. Petitioner cited the five factors discussed by the Illinois Supreme Court in *People v. Holman*, 2017 IL 120655, ¶ 46, arguing the court did not adequately analyze these factors. In *Holman*, the supreme court stated,

> "[A] juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Id.*

According to petitioner, the court mentioned that petitioner was young but did not specifically consider youth-associated characteristics specific to her (factor 1); gave inadequate weight to evidence of her home environment and past abuse (factor 2); did not consider petitioner's participation in the context of her interactions with her codefendants (factor 3); made no mention of petitioner's competence (factor 4); and gave no indication how petitioner's potential for rehabilitation impacted her sentence (factor 5).

¶ 13    The State filed a motion to dismiss the petition on grounds that (1) the petition was untimely

and (2) the trial court properly considered petitioner's youth and its attendant circumstances under *Holman* when it imposed a discretionary *de facto* life sentence. Petitioner filed a reply in which she emphasized the trial court's failure to adequately consider her potential for rehabilitation. The trial court granted the State's motion to dismiss, citing, in relevant part, the trial court's statement, "I see her as a cold and callous person. And you're not going to change that from what I see," as evidence the trial court determined petitioner could not be rehabilitated. Petitioner filed a motion to reconsider, which the trial court dismissed.

¶ 14       Petitioner timely appealed.

¶ 15                                    II. ANALYSIS

¶ 16       Petitioner contends the trial court erred when it dismissed her postconviction petition. She was convicted of first-degree murder and concealment of homicidal death. 720 ILCS 5/9-1(a)(1) (West 2004); *id.* § 9-3.1(a). As noted in her petition, the trial court had discretion to sentence petitioner to a minimum of 20 years imprisonment for first-degree murder (see *id.* § 5-8-1(a)(1)(a)); the court chose 48 years on that count and 53 years total. Petitioner contends the trial court violated the eighth amendment and the proportionate penalties clause when it imposed this sentence, and requests a new sentencing hearing.

¶ 17       The Post-Conviction Hearing Act authorizes any person imprisoned in the penitentiary to file a petition in the trial court asserting a denial of her constitutional rights in the underlying proceeding. 725 ILCS 5/122-1(a)(1) (West 2018). The Act establishes three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may dismiss the petition if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2018); *Domagala*, 2013 IL 113688, ¶ 32. If the trial court does not dismiss the petition, it advances to the second stage, at which the petitioner must make a substantial showing of a constitutional violation.

6

*Domagala*, 2013 IL 113688, ¶ 33; *People v. Reeves*, 412 Ill. 555, 560 (1952). If the petitioner makes the requisite showing, she is entitled to a third stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. Nevertheless, a postconviction petition may not be filed "more than 6 months from the date for filing a certiorari petition [in the United States Supreme Court], unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2018).

¶ 18    The trial court dismissed petitioner's postconviction petition at the second stage. The second stage tests the legal sufficiency of the petition, and the petitioner's allegations are taken as true unless affirmatively refuted by the record. *Id.* ¶ 35. We review a second stage dismissal *de novo*. *People v. Ramsey*, 2019 IL App (3d) 160759, ¶ 13. We may affirm for any reason supported by the record, regardless of whether the trial court relied on that basis. *People v. Aljohani*, 2022 IL 127037, ¶ 28.

¶ 19                          A. Eighth Amendment

¶ 20    Petitioner argues, pursuant to *Miller* and its progeny, that the postconviction court erred because it failed to recognize that the sentencing court did not *adequately* consider her youth. Regarding the sentencing proceedings, petitioner acknowledges the trial court indicated that it believed the offense would recur, "particularly if [petitioner] gets angry at you." Nevertheless, she argues "the court did not articulate any assessment of whether [petitioner's] violent anger was linked to the developmental stage of her adolescent brain" or "consider whether that violent anger might abate as she matured in cognitive function from a 16-year-old adolescent into adulthood and as she availed herself of educational opportunities and other rehabilitative programs." She emphasizes that the murder was petitioner's only criminal offense and no evidence was presented that petitioner threatened violence against anybody else.

7

¶ 21    The eighth amendment of the United States Constitution prohibits cruel and unusual punishments, including those disproportionate to the offender and the offense. U.S. Const., amends. VIII, XIV; *Miller v. Alabama*, 567 U.S. 460, 469 (2012); *People v. Holman*, 2017 IL 120655, ¶ 33. In 2012, the United States Supreme Court held that a sentencing scheme violates the eighth amendment prohibition if it imposes mandatory life in prison without any possibility of parole on juvenile offenders. *Miller*, 567 U.S. at 479. A court could sentence a juvenile to life without parole, but only after first "considering an offender's youth and attendant characteristics." *Id.* at 483. In 2016, the Court clarified that *Miller* created a substantive rule with retroactive effect, barring life without parole "for all but the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility." *Montgomery v. Louisiana*, 577 U.S. 190, 209, 212 (2016). In contrast, no similar substantive rule with retroactive effect exists under the proportionate penalties clause of the Illinois Constitution. See *People v. Dorsey*, 2021 IL 123010, ¶ 74; *People v. LaPointe*, 2018 IL App (2d) 160903, ¶¶ 56-60.

¶ 22    Prior to *Dorsey*, the Illinois Supreme Court construed *Miller* and *Montgomery* to require that trial courts sentencing juvenile defendants to life without parole, after considering a non-exhaustive set of factors, "determine[]" that the defendant's actions "showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Holman*, 2017 IL 120655, ¶ 46 (citing *Miller*, 567 U.S. at 863-64). Our supreme court also expanded the substantive protection of those decisions. First, the court held that a mandatory sentence that is the functional equivalent of life without parole cannot be imposed on a juvenile. *People v. Reyes*, 2016 IL 119271, ¶ 9 (holding sentence that imposed mandatory minimum of 89 years' imprisonment was a *de facto* life-without-parole sentence). Relying on recent legislative enactments, the court later held that a legislatively mandated minimum sentence

greater than 40 years constitutes a *de facto* life sentence. *People v. Buffer*, 2019 IL 122327, ¶ 42.

¶ 23     Nevertheless, the United States Supreme Court has reiterated that, prior to imposing a discretionary life-without-parole sentence, a court is *not* required to make a separate factual finding of permanent incorrigibility, explicit *or* implicit, to satisfy the eighth amendment. *Jones v. Mississippi*, 141 S. Ct. 1307, 1318-21 (2021). Although States may impose more stringent sentencing limits, including requiring extra factual findings or formal explanations on the record as to why a sentence is appropriate notwithstanding a defendant's youth, the eighth amendment does not require such procedures. *Id.* at 1323; see also *Dorsey*, 2021 IL 123010, ¶ 66 (noting that, under *Jones*, a sentence complies with *Miller* if the court had discretion to consider the defendant's youth).

¶ 24     Petitioner argues that, notwithstanding the United States Supreme Court's statement in *Jones*, our supreme court's decision in *Holman* continues to require proper consideration of the *Miller* factors and a finding of permanent incorrigibility. *Holman* stated that a juvenile defendant may be sentenced to life without parole "*only if* the trial court *determines* that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." (Emphases added.) *Holman*, 2017 IL 120655, ¶ 46. Indeed, other courts in Illinois have agreed that *Jones v. Mississippi* did not alter how Illinois courts should apply *Miller*. The First District, citing *Dorsey*, found the holding of *Holman* "questionable" in light of *Jones* but construed that decision to require that the trial court make a separate finding as to the defendant's rehabilitative potential. *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 22 n.2 ("As of the issuance of this decision, our supreme court has addressed *Jones* only in passing, suggesting that the holding of *Holman* in light of *Jones* is 'questionable.' [Citing *Dorsey*] Unless and until explicit direction is given in light of *Jones*, we are constrained to follow our current

9

supreme court precedent."). Because the trial court did not refer to *specific* propensities and characteristics of youth applicable to petitioner, she contends her sentence violated the eighth amendment under *Miller* and *Holman*.

¶ 25    A careful reading of the *Dorsey* court's discussion of *Jones v. Mississippi*, however, leads us to conclude that Illinois trial courts need not make specific factual findings before imposing a discretionary, *de facto* life sentence on a juvenile.

¶ 26    In *Dorsey*, our supreme court construed *Jones v. Mississippi* to unequivocally dispense with any formal factfinding requirement by the trial court. *Dorsey*, 2021 IL 123010, ¶ 40 (citing *Jones v. Mississippi*, 141 S. Ct. at 1311, 1314-16); see also *People v. Griffin*, 2021 IL App (1st) 170649-U, ¶ 86 (Gordon, J., specially concurring) ("[I]n *Holman*, the Illinois Supreme Court found that the United States Supreme Court's eighth-amendment jurisprudence applied to discretionary sentences. *** By contrast, in *Jones*, the United States Supreme Court found that a discretionary procedure generally provides all the safeguards to which a juvenile is entitled under the eighth amendment. [Citation.] The United States Supreme Court found that, if a sentencing court had the discretion to consider youth, then, by necessity, the sentencing court must have considered it, and no 'on-the-record explanation' is 'required.' "). So long as the sentencing court has discretion to consider a defendant's youth and its attendant characteristics and may impose a lesser sentence, a *de facto* life sentence will not violate the eighth amendment. *Dorsey*, 2021 IL 123010, ¶ 40; see also *People v. Jones*, 2021 IL 126432, ¶ 28 ("*Miller*'s additional protections for juvenile offenders apply only when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence."). Indeed, we note that the *Dorsey* court went so far as to characterize as "questionable" the *Holman* court's holding that *Miller* applies to discretionary life sentences. *Dorsey*, 2021 IL 123010, ¶ 41. While this is a question beyond the scope of our analysis,

10

it is now clear that " 'a finding of fact regarding a child's incorrigibility *** is not required.' " *Id.* ¶ 40 (quoting *Jones v. Mississippi*, 141 S. Ct. at 1315-16).

¶ 27 Petitioner cites a litany of cases where the Illinois Appellate Court vacated *de facto* life sentences on the ground that the trial court made no explicit determination that the petitioner was permanently incorrigible. See, *e.g.*, *People v. Vatamaniuc*, 2021 IL App (2d) 180379, ¶¶ 106, 110; *People v. Royer*, 2020 IL App (3d) 170794, ¶¶ 30-34; *People v. Johnson*, 2020 IL App (3d) 130543-B, ¶¶ 32-35; *People v. Figueroa*, 2020 IL App (1st) 172390, ¶¶ 36-39; *People v. Reyes*, 2020 IL App (2d) 180237, ¶¶ 31-33; *People v. Paige*, 2020 IL App (1st) 161563, ¶¶ 37-40; *People v. Harvey*, 2019 IL App (1st) 153581, ¶¶ 10-13. But all of these cases were decided prior to *Jones v. Mississippi*, which, as recognized by *Dorsey* and *People v. Jones*, disagreed with *Holman* to the extent it set forth a formal factfinding requirement. So long as a trial court exercises discretion in meting out its discretionary life sentence, the sentence will not violate the eighth amendment under *Miller*.

¶ 28 The trial court did just that when it sentenced petitioner. The court articulated its findings, discussed the statutory factors, and explained how the relevant factors related to its findings. Although the mandatory minimum sentence for first-degree murder was 20 years, the trial court sentenced petitioner to a *de facto* life sentence of 48 years. The court noted petitioner was the aggressor, contemplated killing the victim beforehand, and enlisted friends to help dispose of the victim's body; it described petitioner as "a cold and callous person" who would not change. The court opined that petitioner was "nonchalant" when telling peers about her crime, she "did not care, she was covering her tracks," and her criminal conduct was likely to recur. It also acknowledged it had considered her youth and rehabilitative potential. That the sentencing court exercised discretion is beyond dispute.

11

¶ 29    Petitioner also argues that "the court did not articulate any assessment of whether [petitioner's] violent anger was linked to the developmental stage of her adolescent brain." But consideration of brain development is not a prerequisite under *Miller*. The eighth amendment rule announced in *Miller* is derived from the "common sense" fact that children show "transient rashness, proclivity for risk, and inability to assess consequence[.]" *Miller v. Alabama*, 567 U.S. 460, 472 (2012). *Miller* required that sentencers actually consider a defendant's "youth and attendant characteristics" before imposing a sentence. *Id.* at 483. Such characteristics include a juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 477. The discussion of "brain science" in *Miller* was merely a policy rationale for the Court's creation of a new rule. See *id.* at 469-80. While a defendant may support a *Miller* claim by, *e.g.*, presenting brain science research showing that a deficient brain architecture associated with juvenile violence is present in the defendant's brain, thus reducing his moral culpability to that of a juvenile, and that such deficiency can be reformed (*Miller*, 567 U.S. at 472), this is not a requirement. A defendant could also argue his or her crime showed transient immaturity or rashness by reference to other aspects of the defendant's personal history or mental state.

¶ 30                         B. Proportionate Penalties Clause

¶ 31    Petitioner further contends, for the first time in her appellate briefs, that her sentence violated the proportionate penalties clause of the Illinois Constitution, which provides, "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. She acknowledges that she failed to raise a proportionate penalties argument in her postconviction pleadings. But she argues she did not forfeit a proportionate penalties claim because she extensively cited *Holman*, which she contends "is applicable law under the proportionate penalties

clause."

¶ 32    The State responds that petitioner failed to file her postconviction petition within the time allowed under section 122-1(c) of the Post-Conviction Hearing Act, and that petitioner failed to alleged facts showing the delay was not due to her culpable negligence. The State raised this argument in its motion to dismiss. In her reply brief, petitioner argues she was not culpably negligent because "she could not anticipate subsequent developments in law that called into question the constitutionality of her sentence." Specifically, petitioner contends the culpable negligence standard is similar to the cause-and-prejudice standard applicable in proceedings involving successive postconviction petitions. See *People v. Rissley*, 206 Ill. 2d 403, 420 (2003) (noting that culpable negligence is greater than ordinary negligence and akin to recklessness). Further, she observes, our supreme court has previously held that the "cause" test is satisfied if the *Miller* decision was unavailable during the relevant time period. See *People v. Davis*, 2014 IL 115595, ¶ 42 ("In terms of the requisite cause and prejudice of the Post–Conviction Hearing Act, *Miller's* new substantive rule constitutes 'cause' because it was not available earlier to counsel [citation], and constitutes prejudice because it retroactively applies to defendant's sentencing hearing.").

¶ 33    We agree with the State. *Davis* is inapposite here because the court there dealt with "cause" for failure to raise a *Miller*-based eighth amendment claim, not a proportionate penalties claim. *Id.* ¶¶ 42, 43. Our supreme court has expressly foreclosed applying the same logic in the context of the proportionate penalties clause. See *People v. Clark*, 2023 IL 127273, ¶ 67 ("As we concluded in [*People v.*] *Dorsey*, the unavailability of *Miller* and *Atkins* did not impede defendant's presentation of his proportionate penalties claim on direct appeal or impede his opportunity to raise the claim in his first postconviction proceeding." (citing *Dorsey*)); *People v. Dorsey*, 2021 IL

13

123010, ¶ 74 ("*Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause' "). In *Clark*, the court definitively concluded that the petitioner's reliance on *Miller* and its progeny failed to establish "cause" for failure to raise his proportionate penalties claim in an earlier proceeding. *Clark*, 2023 IL 127273, ¶ 67.

¶ 34    Similarly, this petitioner cannot demonstrate cause for failing to raise an otherwise timely proportionate penalties claim. *Clark* establishes that petitioner could not show lack of culpable negligence as she understands the term, thus her argument necessarily fails. She asks this court to reweigh the evidence relevant to her sentencing (specifically, evidence of her rehabilitative potential) " 'within the existing constitutional sentencing framework' " (*id.* ¶ 65), but this was already done on direct appeal, where she argued the sentence was excessive considering her youth and background. See *People v. Kolb*, No. 3-06-0856 (2008) (unpublished summary order under Illinois Supreme Court Rule 23(c)) ("[T]he trial court sentenced defendant to less than the maximum but much more than the minimum. The trial court fashioned an appropriate sentence based on its balancing of defendant's prospects for rehabilitation (defendant herself is only a teenager) and the protection of society (defendant's murder, via strangulation, of a 16-year-old girl). [Citation.] As it appears from the record that the trial court took into consideration all the evidence presented to it, both in mitigation and aggravation, we cannot say that the sentence it imposed constituted an abuse of discretion."). Accordingly, petitioner failed to allege facts showing her delay was not due to culpable negligence and the trial court did not err when it dismissed her petition at the second stage.

¶ 35                                          III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of Rock Island County.

14

¶ 37        Affirmed.